No. 23-10887

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

———————————————

ROBERT KLECKLEY,

*Petitioner-Appellant*,

v.

STATE OF FLORIDA,

*Respondent-Appellee*.

———————————————

On Appeal from the United States District Court
for the Southern District of Florida
No. 0:19-cv-62972-RKA (Hon. Roy K. Altman)

———————————————

## APPELLANT'S MOTION TO EXPAND A CERTIFICATE OF APPEALABILITY

———————————————

R. Stanton Jones
Andrew T. Tutt
ARNOLD & PORTER
 KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 942-5000
Fax: (202) 942-5999
stanton.jones@arnoldporter.com
andrew.tutt@arnoldporter.com

William T. Sharon
ARNOLD & PORTER
 KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
Fax: (212) 836-8689
william.sharon@arnoldporter.com

*Counsel for Appellant Robert Kleckley*

No. 23-10887, *Robert Kleckley v. State of Florida*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1(a)(1) and 26.1-2(c), Appellant Robert Kleckley, through undersigned counsel, hereby submits this Certificate of Interested Persons and Corporate Disclosure Statement.

Kleckley states that he is not a corporation, does not have a parent corporation, nor has he issued shares or debt securities to the public. Kleckley is not a subsidiary or affiliate of any publicly owned corporations.

I hereby certify that the following have an interest in the outcome of this appeal:

1. Altman, Honorable Roy K., *District Court Judge*

2. Arnold & Porter Kaye Scholer LLP, *Attorneys for Appellant*

3. Bidwill, Honorable Martin J. (17th Circuit Judge)

4. Bober, Honorable Bernard I. (17th Circuit Judge)

5. Bondi, Pamela Jo ([former] Attorney General)

6. Buschel, Robert C. (Appellate Counsel)

7. Butterworth, Robert A. ([former] Attorney General)

8. Chloupek, Joseph (Assistant Public Defender)

9. Ciklin, Honorable Corey J. (Fourth District Judge)

10. Cohn, Honorable James I. (U.S. District Judge [former 17th Cir. Judge])

No. 23-10887, *Robert Kleckley v. State of Florida*

11. Conner, Honorable Burton C. (Fourth District Judge)

12. Crist, Charlie ([former] Attorney General)

13. Edwards, K. (witness)

14. Egber, Mitchell A., *Attorney for Appellee*

15. Farmer, Honorable Gary M. ([former] Fourth District Judge)

16. Florida Office of Attorney General, *Attorneys for Appellee*

17. Gardiner, Honorable Ana ([former] 17th Circuit Judge) – Disbarred

18. Gerber, Honorable Jonathan D. (Fourth District Judge)

19. Gorman, James (witness)

20. Gross, Honorable Robert M. (Fourth District Judge)

21. Gunther, Honorable Bobby W. ([former] Fourth District Judge)

22. Haughwout, Carey (Public Defender)

23. Hazouri, Honorable Fred A. ([former] Fourth District Judge)

24. Holden, Peter ([former] Assistant State Attorney)

25. Hugentugler, Susan Odzer ([former] Assistant State Attorney)

26. Jones, R. Stanton, *Attorney for Appellant*

27. Jorandby, Richard L. ([former] 15th Circuit Public Defender)

28. Kleckley, Kimberly (witness)

29. Kleckley, Robert, *Petitioner-Appellant*

30. Klein, Honorable Larry A. ([former] Fourth District Judge)

No. 23-10887, *Robert Kleckley v. State of Florida*

31. Kuntz, Honorable Jeffrey T. (Fourth District Judge)

32. Lipson, Alan T. ([former] Assistant Public Defender)

33. Louis, Honorable Lauren Fleischer, *Magistrate Judge*

34. Major, Sheila (witness)

35. May, Honorable Melanie G. (Fourth District Judge)

36. McHugh, Dennis (Trial Counsel)

37. Mielke, Thomas C. ([former] Assistant Attorney General)

38. Moody, Ashley (Attorney General)

39. Nelson, Ava (witness)

40. Polen, Honorable Mark E. ([former] Fourth District Judge)

41. Raft, J. Scott (Assistant State Attorney)

42. Rebollo, Honorable Carlos S. (17th Circuit Judge [former Assistant State Attorney])

43. Reid, Honorable Lisette M., *Magistrate Judge*

44. Rich, M.S. (witness)

45. Rodriguez, Miguel (victim/witness)

46. Sandler, Sarah W. (Assistant Public Defender)

47. Satz, Michael J. ([former] State Attorney)

48. Schreiber, Alan H. ([former] Public Defender)

49. Sharon, William T., *Attorney for Appellant*

50. Smith, Neva (Assistant State Attorney)

51. State of Florida, *Respondent-Appellee*

52. Stevenson, Honorable W. Matthew ([former] Fourth District Judge)

53. Stone, Honorable Barry ([former] Fourth District Judge)

54. Taylor, Honorable Carole Y. ([former] Fourth District Judge)

55. Tutt, Andrew T., *Attorney for Appellant*

56. Warner, Honorable Martha C. (Fourth District Judge)

57. Worthy, Anesha, *Attorney for Appellee*


Dated: June 30, 2023                      Respectfully submitted,

R. Stanton Jones                          */s/ William T. Sharon*
Andrew T. Tutt                            William T. Sharon
ARNOLD & PORTER                           ARNOLD PORTER
  KAYE SCHOLER LLP                          KAYE SCHOLER LLP
601 Massachusetts Avenue, NW              250 West 55th Street
Washington, DC 20001                      New York, NY 10019-9710
Telephone: (202) 942-5000                 Telephone: (212) 836-8000
Fax: (202) 942-5999                       Fax: (212) 836-8689
stanton.jones@arnoldporter.com            william.sharon@arnoldporter.com
andrew.tutt@arnoldporter.com


*Counsel for Appellant Robert Kleckley*

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................... I

TABLE OF AUTHORITIES ............................................................................. II

INTRODUCTION .............................................................................................. 1

BACKGROUND ................................................................................................ 1

I.    State Court Proceedings............................................................................ 2

II.   Federal Court Proceedings....................................................................... 5

ARGUMENT ..................................................................................................... 6

I.    Standard of Review.................................................................................. 6

II.   Reasonable Jurists Could Debate Whether Kleckley's Counsel Was
    Constitutionally Ineffective ..................................................................... 7

A.   Counsel Failed to Cross-Examine the State's Key Witness at
    Resentencing............................................................................................ 8

    1.    Reasonable Jurists Could Debate Whether Counsel's Deficient
        Performance Arguably Affected the Resentencing............................. 8

    2.    The District Court's Contrary Reasoning Was Wrong ...................... 11

B.   Counsel Failed to Call Dorothy Kleckley as a Witness at Resentencing...... 13

    1.    Reasonable Jurists Could Debate Whether Counsel's Deficient
        Performance Arguably Affected the Resentencing........................... 13

    2.    The District Court's Contrary Reasoning Was Wrong ...................... 15

C.   Reasonable Jurists Could Debate Whether Counsel's Conflict of
    Interest Adversely Affected Kleckley's Resentencing.................................. 17

III.  Reasonable Jurists Could Debate Whether the "Habitual Felony
    Offender" Enhancement Violated Kleckley's Due Process Rights ............. 20

CONCLUSION ................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apprendi v. New Jersey*,
  530 U.S. 466 (2000)....................................................................20, 23

*Balta v. Fla.*,
  2008 WL 706253 (S.D. Fla. Mar. 14, 2008) ...............................20, 23

*Blanco v. Singletary*,
  943 F.2d 1477 (11th Cir. 1991) .........................................................13

*Breedlove v. Moore*,
  279 F.3d 952 (11th Cir. 2002) ...........................................................20

*Buck v. Davis*,
  580 U.S. 100 (2017)............................................................................6

*Cuyler v. Sullivan*,
  143 S. Ct. 1024 (2023).......................................................................17

*Cuyler v. Sullivan*,
  446 U.S. 335 (1980)...........................................................................17

*Dell v. United States*,
  710 F.3d 1267 (11th Cir. 2013) ...........................................................6

*Dobbs v. Turpin*,
  142 F.3d 1383 (11th Cir. 1998) .........................................................14

*Faretta v. California*,
  422 U.S. 806 (1975)........................................................................7, 13

*Fugate v. Head*,
  261 F.3d 1206 (11th Cir. 2001) ...........................................................8

*Hunter v. United States*,
  449 Fed. Appx. 860 (11th Cir. 2011)..................................................20

*Jackson v. Herring,*
    42 F.3d 1350 (11th Cir. 1995) ............................................................................14

*Jefferson v. GDCP Warden,*
    941 F.3d 452 (11th Cir. 2019) ..............................................................................8

*Kleckley v. State,*
    4 So. 3d 1290 (Fla. Dist. Ct. App. 2009) .............................................................3

*Kleckley v. State,*
    787 So.2d 868 (2001) ............................................................................................2

*Kleckley v. State,*
    810 So. 2d 1081 (Fla. Dist. Ct. App. 2002) ...................................................3, 18

*Lamarca v. Sec'y, Dep't of Corr.,*
    568 F.3d 929 (11th Cir. 2009) ........................................................................7, 11

*McConico v. State of Alabama,*
    919 F.2d 1543 (11th Cir. 1990) ....................................................................17, 18

*Messer v. Kemp,*
    760 F.2d 1080 (11th Cir. 1985) .............................................................................9

*Miller-El v. Cockrell,*
    537 U.S. 322 (2003) ..............................................................................................7

*Muhammad v. Sec., Fla. Dept. of Corr.,*
    733 F.3d 1065 (11th Cir. 2013) ...........................................................................10

*Nixon v. Newsome,*
    888 F.2d 112 (11th Cir. 1989) ..............................................................................8

*Ochoa v. United States,*
    45 F.4th 1293 (11th Cir. 2022) ...........................................................................17

*Ojeda v. McDonough,*
    2007 WL 9760405 (S.D. Fla. Jan. 9, 2007) ..................................................20, 23

*Redman v. Dugger,*
    866 F.2d 387 (11 Cir. 1989) .........................................................................20, 23

*Reed v. Sec'y, Fla. Dep't of Corr.*,
   767 F.3d 1252 (11th Cir. 2014) ........................................................13

*Sanz De La Rosa v. United States*,
   481 F. App'x 480 (11th Cir. 2012) .....................................................8

*Skipper v. South Carolina*,
   476 U.S. 1 (1986) ...............................................................................15

*Slack v. McDaniel*,
   529 U.S. 473 (2000) .....................................................................6, 15

*Smith v. Wainwright*,
   799 F.2d 1442 (11th Cir. 1986) ..........................................................8

*Strickland v. Washington*,
   466 U.S. 668 (1984) .........................................................................7, 8

*Tompkins v. Moore*,
   193 F.3d 1327 (11th Cir. 1999) ..........................................................1

*United States v. Ellison*,
   798 F.2d 1102 (7th Cir. 1986) ..........................................................19

*United States v. Williams*,
   902 F.3d 1328 (11th Cir. 2018) ...................................................17, 20

*United States v. Willis*,
   649 F.3d 1248 (11th Cir. 2011) ..........................................................7

*Williams v. Taylor*,
   529 U.S. 362 (2000)..........................................................8, 13, 14, 15

## Constitutional Provisions

U.S. Const. amend. XIV ............................................................................20

## Statutes

28 U.S.C.
   § 2253(c)(1)(A) .................................................................................6
   § 2253(c)(2) ......................................................................................6

Fla. Stat.

§ 775.082(3)(d) ...................................................................21
§ 775.084(1) .......................................................................21
§ 775.084(2) .......................................................................21
§ 775.084(3) ...............................................................21, 22
§ 775.084(4)(a) ..................................................................21
§ 775.084(4)(e) ........................................................2, 11, 16

## INTRODUCTION

Petitioner-Appellant Robert Kleckley, by and through undersigned counsel, hereby submits this application under 28 U.S.C. § 2253(c) to expand the certificate of appealability ("COA") that the district court granted in this case. Although the district court granted a COA on two issues related to timeliness, it denied a COA on four issues that it resolved on the merits: (1) whether Kleckley's counsel at resentencing was constitutionally ineffective for failing to cross-examine the State's key witness; (2) whether counsel was constitutionally ineffective for failing to call Dorothy Kleckley (then Dorothy Jones) as a witness at resentencing; (3) whether counsel was constitutionally ineffective for operating under a conflict of interest at resentencing; and (4) whether Kleckley's due process rights were violated when the court imposed the "habitual felony offender" enhancement at resentencing. Because reasonable jurists could debate each of these issues, Kleckley respectfully requests that this Court expand his COA and allow him to brief this appeal in full.[1]

## BACKGROUND

Twenty-three years ago, Kleckley was convicted of attempted murder (Count 1) and shooting into an occupied vehicle (Count 2). The convictions stemmed from a dispute on August 20, 1999—two months after Kleckley's 23rd birthday—that

---

[1] As here, "[a]n application to expand the certificate must be filed promptly, well before the opening brief is done." *Tompkins v. Moore*, 193 F.3d 1327, 1332 (11th Cir. 1999).

culminated in Kleckley shooting Miguel Rodriguez in the forearm and leg, at which point Mr. Rodriguez drove away and informed police officers.  Dkt.11 at 35.[2]  Mr. Rodriguez identified Kleckley's photograph in a six-person photo lineup the next day.  *Id.*

## I.     State Court Proceedings

On June 9, 2000, Kleckley was sentenced to concurrent terms of life imprisonment on Count 1 and 30 years' imprisonment on Count 2.  His sentence on Count 2 was enhanced because the court found that he was a "habitual felony offender" under Florida Statute 775.084(4)(e), based on prior convictions for "possession of cocaine," "possession of cannabis," and "either possession, sell, deliver, purchase or manufacture of cannabis."  Dkt.13-2, Transcript of April 9, 2010 Resentencing Hearing ("Tr.") 50:16-52:2.

On May 16, 2001, Kleckley's conviction and sentence were upheld on direct appeal.  *See Kleckley v. State*, 787 So.2d 868 (2001).  On November 19, 2001, he filed a state habeas corpus petition, *pro se*, alleging that his counsel on appeal was ineffective for, among other things, failing to order transcripts of the very sentencing proceeding he was appealing.  Dkt.12-1 at 74-96.

---

[2] Citations to "Dkt." reference the district court's docket in Case No. 19-CV-62972.

On March 20, 2002, the Florida appellate court granted Kleckley's habeas petition and held that his counsel on direct appeal had been ineffective "for failing to order or have transcribed the sentencing transcripts." *Kleckley v. State*, 810 So. 2d 1081, 1081 (Fla. Dist. Ct. App. 2002) (per curiam). The appellate court concluded that "[o]n remand, the trial court may appoint appellate counsel to assist Kleckley with preparing the record on appeal and his initial brief." *Id*.

On May 21, 2008, Kleckley moved to correct an illegal sentence under Rule 3.800(A). He argued that "the State fail[ed] to submit sufficient evidence of qualifying convictions for purposes of habitual offender sentencing," and that "the sentence must be reversed for re-sentencing." Dkt.12-2 at 148. The court denied his motion. Dkt.12-2 at 167.

Kleckley appealed. The Florida appellate court agreed with Kleckley and reversed. It remanded for either of two proceedings: (1) "the attachment of record portions conclusively refuting [Kleckley's] claim," or (2) "for resentencing." *Kleckley v. State*, 4 So. 3d 1290, 1291 (Fla. Dist. Ct. App. 2009).

On February 26, 2010, the trial court ordered a presentence investigation report, Dkt.12-2 at 189, and Kleckley was resentenced on April 9, 2010. The attorney appointed to represent him at resentencing was the same attorney Kleckley had successfully challenged as ineffective for failing to order transcripts from the earlier appeal of his sentence. Dkt.28 at 6.

3

At the resentencing hearing, the judge considered extensive evidence from both the defense and the State, *see* Tr.53:4-5, heard arguments from the prosecutor and defense counsel about Kleckley's rehabilitation and remorse, Tr.47:22-50-15, and acknowledged that he had also considered the presentence investigation report, Tr.50:19.   Four witnesses testified on Kleckley's behalf, speaking to his transformation, accomplishments, and community service while incarcerated. Tr.11:19-20.   The State called several witnesses, including Mr. Rodriguez, who testified that Kleckley was "cold hearted," harbored a "disregard for life," and did not have "any value for life."   Tr.27:6-12.   The judge "appreciate[d] th[is] input." Tr.53:1-4.

Although the judge considered what he believed to be "everything, under all the circumstances," Tr.53:8-9, several crucial pieces of evidence were missing. First, defense counsel failed to ask even a single question of Mr. Rodriguez, even though there was ample evidence that Kleckley was reformed and remorseful since the date of the shooting over a decade earlier.   Second, counsel failed to call Kleckley's wife, Dorothy Kleckley, as a character witness, despite her unique insight into, for example, Kleckley's efforts to attend classes and earn degrees while incarcerated, his positive influence on other inmates, and his plans to create a non-profit organization to help youth offenders and rehabilitated men and women. Finally, defense counsel failed to advise the court that he had previously performed

ineffectively by failing to order transcripts of the original sentencing proceeding in an appeal challenging that very proceeding. After considering all of the information presented, the court concluded that it was "necessary" to resentence Kleckley to 30 years' imprisonment "for protection of the public." Tr.53:1-4.

Kleckley appealed his amended sentence on April 12, 2010. Dkt.12-2 at 238; Dkt.12-2 at 240. He litigated that appeal and corollary challenges for the next nine years, until his final state court appeal was denied on October 31, 2019. *See* Dkt.12-4 at 142.

## II.    Federal Court Proceedings

On December 3, 2019, Kleckley filed the federal habeas petition at issue in this case. *See* Dkt.1. He raised eleven claims, seven of which pertain to his conviction in 2000, and four of which stem from his resentencing in 2010. The district court denied the claims pertaining to the 2000 conviction as untimely and denied the resentencing claims on the merits. Dkt.28 at 1. It granted a COA on the timeliness issues, but denied a COA on the merits issues. Those merits issues, which Kleckley now requests that this Court expand the COA to include, are: (1) whether Kleckley's counsel at resentencing was constitutionally ineffective for failing to cross-examine the State's key witness; (2) whether counsel was constitutionally ineffective for failing to call Dorothy Kleckley as a witness at resentencing; (3) whether counsel was constitutionally ineffective for operating under a conflict of

interest at resentencing; and (4) whether Kleckley's due process rights were violated when the court imposed the "habitual felony offender" enhancement at resentencing.

## ARGUMENT

### I. Standard of Review

A COA is required to appeal "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." 28 U.S.C. § 2253(c)(1)(A). To obtain a COA, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Likewise, this Court will "expand a COA when 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Dell v. United States*, 710 F.3d 1267, 1273 (11th Cir. 2013) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

"The COA inquiry . . . is not coextensive with a merits analysis." *Buck v. Davis*, 580 U.S. 100, 115 (2017). Where, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack*, 529 U.S. at 484, "or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further," *Buck*, 580 U.S. at 115 (quotation marks omitted). The petitioner thus "is not required to show he will

ultimately succeed on appeal, because when [courts] consider an application for a COA, the question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (cleaned).

Courts "should not decline the application for a COA merely because [they] believe the applicant will not demonstrate an entitlement to relief." *Id.* (cleaned).  In fact, a COA may issue even if "every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

## II.  Reasonable Jurists Could Debate Whether Kleckley's Counsel Was Constitutionally Ineffective

The Sixth Amendment guarantees the fair administration of justice "through the calling and interrogation of favorable witnesses, the cross-examination of adverse witnesses, and the orderly introduction of evidence." *Faretta v. California*, 422 U.S. 806, 818 (1975).  It also guarantees "the right to counsel," which "is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  "[T]o demonstrate ineffective assistance of counsel, a defendant must allege facts showing:  1) that his counsel's representation failed to meet an objective standard of reasonableness; and 2) that the deficient performance prejudiced him in such a way that there is a reasonable probability it affected the outcome of the proceeding." *United States v. Willis*, 649 F.3d 1248, 1254 (11th Cir. 2011).  To

establish prejudice, a defendant must show a "probability sufficient to undermine confidence in the outcome." *Williams v. Taylor*, 529 U.S. 362, 391 (2000) (quoting *Strickland*, 466 U.S. at 694).

Reasonable jurists could debate whether Kleckley's counsel at resentencing was ineffective for (A) failing to cross-examine the State's key witness, Miguel Rodriguez; (B) failing to call Kleckley's wife, Dorothy Kleckley, to testify; and (C) operating under an actual conflict of interest.

### A. Counsel Failed to Cross-Examine the State's Key Witness at Resentencing

#### 1. Reasonable Jurists Could Debate Whether Counsel's Deficient Performance Arguably Affected the Resentencing

"A lawyer's duty to render effective assistance of counsel necessarily includes the duty to undertake appropriate investigations in support of the decisions he makes and the actions he takes at trial." *Jefferson v. GDCP Warden*, 941 F.3d 452, 477 (11th Cir. 2019). This includes cross-examining key government witnesses. *See, e.g.*, *Smith v. Wainwright*, 799 F.2d 1442, 1443-44 (11th Cir. 1986) (per curiam) (affirming ineffective-assistance finding where counsel failed to impeach a key government witness); *Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001); *Nixon v. Newsome*, 888 F.2d 112, 117 (11th Cir. 1989) (holding that the failure to impeach a key government witness with prior inconsistent testimony was prejudicial); *Sanz De La Rosa v. United States*, 481 F. App'x 480, 483 (11th Cir. 2012) (unpublished)

8

(remanding for an evidentiary hearing because defense counsel failed to cross-examine a "very persuasive witness" at sentencing). A petitioner can show prejudice based on "a single specific instance where cross-examination arguably could have affected the outcome of either the guilt or sentencing phase of the trial." *Messer v. Kemp*, 760 F.2d 1080, 1089 (11th Cir. 1985).

Reasonable jurists could debate whether counsel's failure to cross-examine the victim of the shooting, Mr. Rodriguez, at Kleckley's resentencing "arguably could have affected the outcome." *Id.* At the resentencing hearing, Mr. Rodriguez testified that Kleckley was "cold hearted," harbored a "disregard for life," and did not have "any value for life." Tr.27:6-12. Mr. Rodriguez urged the court to resentence Kleckley to life imprisonment. Tr.27:12-15.

But Mr. Rodriguez drew those conclusions about Kleckley's character based solely on Kleckley's behavior "that night"—*i.e.*, the night of the crime, more than a decade earlier. His testimony utterly failed to account for Kleckley's rehabilitation and remorse in the subsequent years, which was the entire defense strategy at Kleckley's resentencing hearing—as defense witnesses emphasized:

- "[Kleckley] [t]otally changed." Tr.30:4.

- "Since my brother been incarcerated, he totally changed." Tr.39:24-25.

- "[Kleckley] totally changed. He has accomplished so much for himself until he make me want to accomplish something for myself." Tr.40:7-9.

- "I know Robert has changed. Just recently Robert wrote me a letter. And in the midst of the letter he said something even though he made a choice in life that wasn't right, and he did something that he knew was wrong, but yet he knew right now as he looked back on it he made a mistake." Tr.42:12-17.

- "This young man has changed. He has changed." Tr.44:6.

- "He has changed. And I believe right now if he could tell you right now if he could take it back he would." Tr.44:21-23.

- "I do believe in my heart that he has remorse of what he done." Tr.42:23-24.

A defendant is entitled to "rebut information relevant to his character and record that is admitted against him at the sentencing hearing," *Muhammad v. Sec., Fla. Dept. of Corr.*, 733 F.3d 1065, 1074 (11th Cir. 2013), but defense counsel failed to ask Mr. Rodriguez a *single question*—even when the court invited counsel to do so. Tr.27:18-19 ("THE COURT: Do you want to ask him anything? [DEFENSE COUNSEL]: No, Judge."). Defense counsel did not ask whether Mr. Rodriguez had spoken to Kleckley since the incident, whether he knew what Kleckley had accomplished in the interim, or whether he cared that Kleckley had changed as a person and felt remorse.

The failure to ask these questions mattered. The judge concluded the resentencing by noting that he "appreciate[d] the input of . . . Mr. Rodriguez," and that it was "necessary" to resentence Kleckley to 30 years' imprisonment "for protection of the public." Tr.53:1-4. At a minimum, reasonable jurists could debate

10

whether defense counsel's failure to cross-examine the victim arguably affected the outcome of Kleckley's resentencing hearing. *See Lamarca*, 568 F.3d at 934.

### 2.    The District Court's Contrary Reasoning Was Wrong

The district court erroneously concluded that reasonable jurists would not debate whether cross-examination arguably could have affected the outcome of Kleckley's resentencing.

***First***, the district court observed that "the defendant has no right to confront witnesses at sentencing."  Dkt.28 at 11.  But Kleckley has never asserted a "right" to confront Mr. Rodriguez.  While such an argument might invoke due process, Kleckley's claim is grounded in ineffective assistance.  He claims only that reasonable jurists could debate whether counsel's failure to confront Mr. Rodriguez arguably affected the outcome of his resentencing.  *See Lamarca*, 568 F.3d at 934.

***Second***, the district court summarily concluded that Mr. Rodriguez "offered no factual details that could be rebutted or challenged on cross-examination at all."  Dkt.28 at 12.  But the *factual* assertions in Mr. Rodriguez's testimony weren't the issue.  What mattered to the resentencing judge was Mr. Rodriguez's *opinion* that Kleckley was "cold hearted," harbored a "disregard for life," and didn't have "any value for life."  Tr.27:6-12.  That was key testimony, especially as to whether a habitual-felony-offender enhancement was "necessary for the protection of the public."  Fla. Stat. Ann. § 775.084(4)(e).  Indeed, in concluding that a 30-year

sentence was "necessary" "for protection of the public," the judge expressly "appreciate[d]" Mr. Rodriguez's testimony. Tr.53:1-4.

As discussed, however, Mr. Rodriguez's opinion stemmed from the incorrect premise that Kleckley was unchanged and remorseless. Confronting Mr. Rodriguez with evidence of Kleckley's rehabilitation would have compelled Mr. Rodriguez to reconcile his impression of the 23-year-old young man who pulled the trigger with the "totally different person" Kleckley had become in the decade since. Tr.30:7-8.

***Third***, the district court opined that "there's no reason to believe that the victim had any personal knowledge of any supposed reformation in Kleckley's character," and observed that Mr. Rodriguez's "*specific* request at resentencing— that Kleckley be resentenced to *life in prison*—strongly suggests that, if asked, the victim would not have supported Kleckley's position." *Id.* at \*6 & n.5. But counsel failed to ask Mr. Rodriguez if he even cared whether Kleckley was reformed from the person Mr. Rodriguez described as "cold hearted" on "that night" over a decade earlier. Tr.27:6-12. Mr. Rodriguez may have advocated a harsh sentence precisely *because* he lacked the full picture of the person Kleckley had become. Alternatively, had Mr. Rodriguez expressly refused to recognize Kleckley's growth and remorse, the court might have credited his testimony less. But defense counsel failed to ask something as simple as: "Would your view be different if you knew that Kleckley has changed and feels remorse?"

***Finally***, the district court observed "[a]s an aside . . . that Kleckley's trial counsel extensively cross-examined the victim at trial about his identification, rendering any additional cross at resentencing fairly redundant." *Id.* at *6 n.5. But that identification had nothing to do with the testimony Mr. Rodriguez gave at resentencing, which the judge deemed important, and which cross-examination was critical to rebut—namely, whether Kleckley was "cold hearted" and needed to remain incarcerated for "the protection of the public."

### B. Counsel Failed to Call Dorothy Kleckley as a Witness at Resentencing

#### 1. Reasonable Jurists Could Debate Whether Counsel's Deficient Performance Arguably Affected the Resentencing

Among the Sixth Amendment's guarantees is "the calling and interrogation of favorable witnesses." *Faretta*, 422 U.S. at 818. Defense counsel has a duty to make an "independent evaluation of character witnesses." *Blanco v. Singletary*, 943 F.2d 1477, 1503 (11th Cir. 1991). To establish ineffective assistance for failure to call a witness, a petitioner must (1) identify the testimony that would have been provided and (2) allege that the witness was available to testify. *See Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1262 (11th Cir. 2014).

Both this Court and the Supreme Court have found ineffective assistance where counsel failed to present mitigating evidence. For example, in *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court deemed counsel ineffective for

failing to present evidence of the defendant's remorse and abusive childhood that "might well have influenced the jury's appraisal of [the defendant's] moral culpability." *Id.* at 398-99. And in *Jackson v. Herring*, 42 F.3d 1350 (11th Cir. 1995), this Court found ineffective assistance where counsel failed to discover and introduce mitigating evidence of the defendant's "brutal and abusive childhood." *Id.* at 1367-69; *see also Dobbs v. Turpin*, 142 F.3d 1383, 1390 (11th Cir. 1998).

When he resentenced Kleckley to 30 years on Count 2, the judge believed he had "considered everything, under all of the circumstances." Tr.53:8-9. He concluded that a 30-year term was "necessary . . . for protection of the public." Tr.53:1-2. But the judge didn't have all the information.

Counsel failed to call a key character witness, Dorothy Kleckley, at the resentencing hearing. Mrs. Kleckley would have offered critical mitigating testimony about Kleckley's behavior and character. She has visited Kleckley almost every weekend since before his resentencing hearing. She would have offered insight into, for example, Kleckley's efforts to attend classes and earn degrees while incarcerated, his positive impact on other inmates, and his plans to create a non-profit organization to help youth offenders and rehabilitated men and women. Dkt.28 at 12.

Not only was Mrs. Kleckley the person best able to speak to Kleckley's character, she would have presented a unique perspective because, unlike other

14

family witnesses who testified, Mrs. Kleckley *chose* to be a part of Kleckley's life after his incarceration. Her testimony would have carried significant weight because she chose to marry Kleckley while he was in prison. That is why Kleckley "told counsel about [Mrs. Kleckley] and asked him to call her to testify." Dkt.26 at 5. Counsel's failure to do so deprived the court of crucial mitigating evidence. Reasonable jurists could debate whether this failure arguably affected the outcome of the resentencing. *See Slack*, 529 U.S. at 484; *Williams*, 529 U.S. at 391.

### 2. The District Court's Contrary Reasoning Was Wrong

The district court erroneously concluded that "there was no reasonable probability" that Mrs. Kleckley's testimony "would have changed the outcome of the resentencing hearing." Dkt.28 at 12-13 (quotation marks omitted).

***First***, the court opined that Mrs. Kleckley's testimony would have been "quite cumulative" because four other witnesses testified on Kleckley's behalf at the resentencing hearing. Dkt.28 at 14. But the court failed to account for Mrs. Kleckley's unique insight and perspective. Again, Mrs. Kleckley has visited Kleckley almost every weekend. She made the choice to share her life with the person he had become almost a decade into his incarceration. While the other witnesses spoke to Kleckley's good moral character and rehabilitation, none was as intimately familiar as his wife. *Cf. Skipper v. South Carolina*, 476 U.S. 1, 8 (1986) (holding that additional testimony about the defendant's good behavior while

incarcerated would not have been cumulative because it was offered through a witness with a unique perspective).

**Second**, the district court concluded that the failure to call Mrs. Kleckley was inconsequential because "[t]he purpose of Kleckley's resentencing was simple: to determine whether he should be resentenced as a habitual felony offender on Count 2." Dkt.28 at 13.  But the court plainly thought such testimony was relevant because it considered lengthy testimony about Kleckley's character from both the defense and the State, Tr.53:4-5, heard arguments from the prosecutor and defense counsel about Kleckley's rehabilitation and character, Tr.47:22-50-15, reconsidered the presentence investigation report, Tr.50:19, and assessed what it believed to be "everything, under all the circumstances," Tr.53:8-9.

And even if the resentencing had been limited to the issue of the enhancement, Mrs. Kleckley's testimony still would have been crucial because "the resentencing court had the discretion *not* to impose a 'habitual felony offender' sentence—even if Kleckley otherwise qualified for that designation—so long as it determined 'that it [was] not necessary for the protection of the public.'"  Dkt.28 at 13 (cleaned) (quoting Fla. Stat. § 775.084(4)(e)).  At very least, reasonable jurists could debate whether Mrs. Kleckley's testimony arguably would have affected the outcome of the hearing.

### C.    Reasonable Jurists Could Debate Whether Counsel's Conflict of Interest Adversely Affected Kleckley's Resentencing

"The Sixth Amendment guarantees the right to the assistance of a lawyer who is not laboring under an actual conflict of interest." *Ochoa v. United States*, 45 F.4th 1293, 1298-99 (11th Cir. 2022) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)), *cert. denied*, 143 S. Ct. 1024 (2023). "To succeed on his conflict-of-interest claim, [a petitioner] must establish: (1) a conflict of interest that (2) adversely affected [counsel's] performance." *Id.*

"To establish an adverse effect, [the petitioner] must show some plausible alternative defense strategy or tactic that might have been pursued but for the alleged conflict . . . ." *Id.* (quotation marks omitted). "To be 'plausible,' the alternative strategy or tactic must have been reasonable under the facts." *United States v. Williams*, 902 F.3d 1328, 1332 (11th Cir. 2018) (quotation marks omitted). The petitioner "need not show that the defense would necessarily have been successful if the alternative strategy or tactic had been used," but only "that the alternative possessed sufficient substance to be a viable alternative." *Id.* at 1332-33 (cleaned). The petitioner also "must show some link between the conflict and the decision to forgo the alternative strategy of defense." *Id.* at 1333 (ellipses omitted).

In *McConico v. State of Alabama*, 919 F.2d 1543 (11th Cir. 1990), for example, this Court found an "adverse effect" when defense counsel, among other things, "declined to call [the appellant's] neighbor who might have corroborated

17

[the] appellant's version of events and contradicted the state's key witness." *Id.* at 1548. "Although [this] may not have changed the outcome," the Court concluded, "that is not what the constitutional standard requires." *Id.*

Reasonable jurists could debate whether Kleckley's counsel at resentencing had a conflict of interest that adversely affected his defense of Kleckley. In a state-court collateral proceeding, Kleckley alleged that his counsel on direct appeal had performed ineffectively by failing to adequately compile the sentencing record. *Kleckley*, 810 So. 2d at 1081. Kleckley noted that the "sentencing transcripts were never ordered," Dkt.12-1, at 76, even though his appeal challenged that very sentence. Kleckley thus argued, *pro se*, that he "was deprived of his right to appellate review of his judgment and sentence." Dkt.12-1, at 76. The Florida appellate court agreed with Kleckley and held that counsel had been ineffective "for failing to order or have transcribed the sentencing transcripts" of the very sentencing proceeding he was appealing. *Kleckley*, 810 So. 2d at 1081. The appellate court concluded that "[o]n remand, the trial court may appoint appellate counsel to assist Kleckley with preparing the record on appeal and his initial brief." *Id*.

When the Florida appellate court ultimately ordered the resentencing at issue here, however, Kleckley received the *same counsel* he had successfully challenged

18

as ineffective.  Dkt.28 at 6-7.[3]  The district court here thus assumed for purposes of Kleckley's challenge that his "prior successful challenge of [counsel's] representation resulted in an actual conflict of interest."  *Id.* at *5; *cf. United States v. Ellison*, 798 F.2d 1102, 1106 (7th Cir. 1986) (concluding that there was an actual conflict where the "same counsel represented defendant at [a subsequent] hearing" after providing the defendant with advice that may have been malpractice).

Even so, the district court concluded that reasonable jurists could not debate whether counsel's actual conflict of interest adversely affected his representation of Kleckley at the resentencing proceeding.  It focused on whether the "proposed strategies" counsel failed to pursue "were reasonable."  Dkt.28 at 8.  The "alternative strategies" Kleckley identified were the same ones underlying his other ineffectiveness claims:  (1) counsel elected not to cross-examine the State's key witness, Mr. Rodriguez; and (2) counsel failed to call Mrs. Kleckley as a witness.  The court concluded that "neither of these proposed strategies were reasonable" and that "the second wasn't really an *alternative* strategy at all" (because other witnesses testified about similar subject matter).  Dkt.28 at 8.

The court's explanation is inadequate for the reasons discussed.  *See supra* II.A-B.  Further, the district court rejected the conflict-of-interest claim by

---

[3] Kleckley would have fired his counsel before the resentencing, but "he did not want to represent himself and . . . believed that was his only option."  Dkt.1 at 5-6.

incorrectly applying a test that was even *more* favorable to Kleckley than the test underlying his other ineffectiveness claims: Whether reasonable jurists could debate that cross-examining the State's key witness, or calling Mrs. Kleckley to testify, would "have been *reasonable* under the facts." *Williams*, 902 F.3d at 1332 (emphasis added) (quotation marks omitted). At absolute minimum, reasonable jurists could debate whether Kleckley's counsel failed to pursue reasonable strategies.

## III. Reasonable Jurists Could Debate Whether the "Habitual Felony Offender" Enhancement Violated Kleckley's Due Process Rights

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Due process protections extend "to determinations that go not to a defendant's guilt or innocence, but simply to the length of his sentence." *Apprendi v. New Jersey*, 530 U.S. 466, 484 (2000) (brackets omitted). Although "federal courts must respect [state-court interpretations of state] law absent a constitutional violation," *Breedlove v. Moore*, 279 F.3d 952, 963 (11th Cir. 2002), there is a "serious question" of "the constitutionality of imposing sentences beyond the statutory maximum on a basis that is [not] applicable," *Hunter v. United States*, 449 Fed. Appx. 860, 862 (11th Cir. 2011) (unpublished). Thus, "an exception to the general rule exists where a § 2254 petitioner contends that his sentence exceeds the maximum authorized under state law, because such a claim has due process

20

implications." *Balta v. Fla.*, 2008 WL 706253, at *3 (S.D. Fla. Mar. 14, 2008) (citing *Redman v. Dugger*, 866 F.2d 387 (11 Cir. 1989)); *Ojeda v. McDonough*, 2007 WL 9760405, at *12 (S.D. Fla. Jan. 9, 2007) (same).

Reasonable jurists could debate whether Kleckley qualifies for a habitual-felony-offender enhancement, and thus whether his sentence exceeds the statutory maximum and violates due process.  The maximum sentence for shooting into an occupied vehicle under Florida Statute § 790.19 is fifteen years.   Fla. Stat. § 775.082(3)(d).  Even so, the court sentenced Kleckley to a 30-year term on that count.  It did so because it found that he qualified for a habitual-felony-offender enhancement under Florida Statute § 775.084(4)(a).

As Kleckley has argued, however, he should not have been subject to that enhancement.  A defendant qualifies for the habitual-felony-offender enhancement if (1) "[t]he defendant has previously been convicted of any combination of two or more felonies"; (2) the defendant committed the latest felony "[w]ithin 5 years of the date of the conviction of the defendant's last prior felony or other qualified offense, or within 5 years of the defendant's release from a prison sentence"; and (3) "[t]he felony for which the defendant is to be sentenced, and one of the two prior felony convictions, is not a violation of [Section] 893.13 relating to the purchase or the possession of a controlled substance."  Fla. Stat. § 775.084(1)-(3).

21

Reasonable jurists could debate whether the third condition is satisfied here. In sentencing Kleckley as a habitual-felony offender, the court relied on the following convictions:

- Case No. 994537CF10A: "possession of cocaine";

- Case No. 9618542CF10A: "possession of cocaine";

- Case No. 94109175CFl0A: "possession of cannabis"; and

- Case No. 9521529CF10A: "either possession, sell, deliver, purchase or manufacture of cannabis."

Tr.50:16-52:2. "[B]ased upon this evidence," the trial court found that Kleckley had been "convicted of at least two felony offenses" and that "[a]t least one of them [w]as a violation of some statute other than 893.12 relating to the simple purchase or possession of a controlled substance." Tr.52:5-11. This finding, however, is irreconcilable with the court's statement that Kleckley's fourth conviction was for "*either*" the possession, sale, delivery, purchase, or manufacturing of cannabis. Tr.51:5. In fact, the court acknowledged that "[i]t doesn't clearly say what it is on that one," Tr.52:1-2—meaning that the court didn't actually find that Kleckley had been convicted of a crime other than the "purchase or the possession of a controlled substance." Fla. Stat. § 775.084(3). And even if the trial court *had* found that Kleckley had been convicted of selling cannabis, reasonable jurists could debate whether such a conviction "relat[es] to the purchase or the possession of a controlled substance" and thus cannot sustain the enhancement. Fla. Stat. § 775.084(3).

While the district court adopted the position of some courts that "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved," Dkt.28 at 15, other courts have recognized that "an exception to th[is] general rule exists where a § 2254 petitioner contends that his sentence exceeds the maximum authorized under state law, because such a claim has due process implications," *Balta*, 2008 WL 706253, at *3 (citing *Redman*, 866 F.2d 387); *Ojeda*, 2007 WL 9760405, at *12 (same). Clearly, therefore, reasonable jurists could debate whether a sentence that dramatically exceeds the statutory maximum violates due process. Because reasonable jurists also could debate whether Kleckley qualifies for a habitual-felony-offender enhancement, and thus whether the court imposed a sentence that not only exceeded but doubled the statutory maximum, a COA is warranted on Kleckley's due process claim. *See Apprendi*, 530 U.S. at 484.

## CONCLUSION

Kleckley respectfully requests that the Court grant his motion to expand the COA.

23

Dated: June 30, 2023

Respectfully submitted,

R. Stanton Jones
Andrew T. Tutt
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 942-5000
Fax: (202) 942-5999
stanton.jones@arnoldpoter.com
andrew.tutt@arnoldporter.com

*/s/ William T. Sharon*
William T. Sharon
ARNOLD PORTER
  KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
Fax: (212) 836-8689
william.sharon@arnoldporter.com

*Counsel for Appellant Robert Kleckley*

24

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Application for a Certificate of Appealability was filed electronically on June 30, 2023 and will therefore be served electronically upon all counsel.

*/s/ William T. Sharon*
William T. Sharon

*Counsel for Appellant Robert Kleckley*

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2), because it contains 5,182 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), according to the word count feature of Microsoft Word. This document complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared in a proportionally spaced typeface using 14-point Times New Roman font.

*/s/ William T. Sharon*
William T. Sharon

*Counsel for Appellant Robert Kleckley*