No. 23-10887

———————————————

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

———————————————————————

ROBERT KLECKLEY,

*Petitioner-Appellant,*

v.

STATE OF FLORIDA,

*Respondent-Appellee.*

———————————————————————

Appeal from the United States District Court
for the Southern District of Florida
Case No. 0:19-cv-62972-RKA
The Honorable Roy K. Altman

———————————————————————

## BRIEF OF FEDERAL COURTS SCHOLARS AS AMICI CURIAE
## IN SUPPORT OF PETITIONER-APPELLANT

———————————————————————

Gregory Cui
Brendan Bernicker
RODERICK AND SOLANGE MACARTHUR
  JUSTICE CENTER
501 H St. NE, Ste. 275
Washington, D.C. 20002
(202) 869-3434
gregory.cui@macarthurjustice.org

*Counsel for Amici Curiae*

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Eleventh Circuit Rule 26.1-2(b), *amici curiae*, by and through the undersigned counsel, hereby certify that to the best of their knowledge the certificate of interested persons filed by Petitioner-Appellant Robert Kleckley is correct and, with the following additions, complete:

- Blume, John H., *amicus curiae*

- Freedman, Eric M., *amicus curiae*

- Garrett, Brandon L., *amicus curiae*

- Hertz, Randy A., *amicus curiae*

- Marceau, Justin, *amicus curiae*

- Primus, Eve B., *amicus curiae*

Pursuant to Eleventh Circuit Rule 26.1-3, the undersigned further certifies that no publicly traded company or corporation has an interest in the outcome of the case or appeal.

Respectfully submitted,

Date: December 1, 2023

*/s/ Gregory Cui*
Gregory Cui

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ........................................................................ C-1

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES ................................................................. iii

INTEREST OF *AMICI CURIAE* ........................................................... 1

STATEMENT OF ISSUES ..................................................................... 4

INTRODUCTION .................................................................................... 5

SUMMARY OF ARGUMENT ................................................................. 7

ARGUMENT ............................................................................................ 9

I.    AEDPA's Statute of Limitations Provision Contemplates a Single Judgment that Resolves the State's Entire Case. ............................... 9

    A.    The meaning of "judgment" under § 2244(d)(1)(A) is a question of federal law. ........................................................................... 9

    B.    "The judgment" for purposes of § 2244(d)(1)(A) resolves all counts charged and tried together. ............................................ 10

II.    Mr. Kleckley's Petition Was Timely Because the Judgment Against Him Became Final When He Exhausted His Direct Appeal After His Resentencing. ................................................................................ 13

    A.    A judgment becomes final when the opportunity for direct review, including any direct review available as a result of reopening or resentencing, concludes. .................................... 13

    B.    Mr. Kleckley's resentencing created an opportunity for direct review and thus reset the limitations period. ............................ 16

III.    Alternatively, Mr. Kleckley's Petition Was Timely Because His Resentencing Resulted in a New Judgment. ................................... 19

CONCLUSION ........................................................................................ 23

CERTIFICATE OF COMPLIANCE...........................................................................25

CERTIFICATE OF SERVICE ...............................................................................26

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Banister v. Davis*,
    140 S. Ct. 1698 (2020)................................................................2, 5

*Berman v. United States*,
    302 U.S. 211 (1937).................................................................9, 10

*Burton v. Stewart*,
    549 U.S. 147 (2007).................................................10, 13, 21, 22

*Clements v. Florida*,
    59 F.4th 1204 (11th Cir. 2023) ...........................................2

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)...............................................................13

*Ferreira v. Sec'y Dep't of Corr.*,
    494 F.3d 1286 (11th Cir. 2007) ...................................*passim*

*Gonzalez v. Thaler*,
    565 U.S. 134 (2012)........................................................13, 14

*Hardwick v. Sec'y, Fla. Dep't of Corr.*,
    803 F.3d 541 (11th Cir. 2015) ............................................2

*Jimenez v. Quarterman*,
    555 U.S. 113 (2009)......................................................*passim*

*Johnson v. United States*,
    623 F.3d 41 (2d Cir. 2010) .........................................12, 18

*King v. Morgan*,
    807 F.3d 154 (6th Cir. 2015) .....................................12, 19

*Magwood v. Patterson*,
    561 U.S. 320 (2010)...............................................8, 20, 22

*Maharaj v. Moore*,
    No. 013053CIV, 2001 WL 34010559 (S.D. Fla. Dec. 27, 2001).......................11

*Maharaj v. Sec'y Dep't of Corr.*,
304 F.3d 1345 (11th Cir. 2002) .........................................................................11

*Pace v. DiGuglielmo*,
544 U.S. 408 (2005)........................................................................................17

*Patterson v. Sec'y, Fla. Dep't of Corr.*,
849 F.3d 1321 (11th Cir. 2017) (*en banc*).........................................................21

*Rhines v. Weber*,
544 U.S. 269 (2005).........................................................................................5

*Rocha v. Sec'y, Fla. Dep't of Corr.*,
692 F. App'x 576 (11th Cir. 2017)....................................................................20

*Thompson v. Fla. Dep't of Corr.*,
606 F. App'x 495 (11th Cir. 2015)...............................................................17, 18

*United States v. Dodson*,
291 F.3d 268 (4th Cir. 2002) .......................................................................11, 12

*Wentzell v. Neven*,
674 F.3d 1124 (9th Cir. 2012) ..........................................................................12

*Zack v. Tucker*,
704 F.3d 917 (11th Cir. 2013) (*en banc*).......................................................17, 18

**Statutes**

28 U.S.C. § 2244(b) .....................................................................................5, 20

28 U.S.C. § 2244(d)(1)(A)...........................................................................*passim*

28 U.S.C. § 2254.........................................................................................*passim*

**Other Authorities**

*Judgment*, *Black's Law Dictionary* (6th ed. 1991) ....................................................9

## INTEREST OF *AMICI CURIAE*[1]

*Amici curiae* are federal courts scholars who study the Anti-Terrorism and Effective Death Penalty Act (AEDPA) and the writ of habeas corpus.

**Professor John H. Blume** is the Samuel F. Leibowitz Professor of Trial Techniques at Cornell Law School, where he teaches Criminal Procedure and Federal Appellate Practice and directs the Capital Punishment Clinic. He is the author of several books and numerous articles, many of which focus on federal habeas corpus practice and procedure. He has also represented numerous indigent petitioners in federal habeas corpus proceedings.

**Professor Eric M. Freedman** is the Siggi B. Wilzig Distinguished Professor of Constitutional Rights at Hofstra Law School. His many scholarly publications regarding habeas corpus law and history include the books *Habeas Corpus: Rethinking the Great Writ of Liberty* (2003), and *Making Habeas Work: A Legal History* (2018).

**Professor Brandon L. Garrett** is the L. Neil Williams, Jr. Professor of Law and director of the Wilson Center for Science and Justice at Duke University

---

[1] This brief has not been authored, in whole or in part, by counsel to any party in this appeal. No party or counsel to any party contributed money intended to fund the preparation or submission of this brief. No person, other than the *amici* or their counsel, contributed money that was intended to fund preparation or submission of this brief. All parties have consented to the filing of this brief.

School of Law. He is one of two co-authors of the casebook *Federal Habeas Corpus: Executive Detention and Post-Conviction Litigation* (2013), which has been cited by this Court. *See, e.g.*, *Clements v. Florida*, 59 F.4th 1204, 1206 (11th Cir. 2023). He has also published articles about federal habeas corpus and teaches a course called "Federal Habeas Corpus" at Duke Law.

**Professor Randy A. Hertz** is the Fiorello LaGuardia Professor of Clinical Law and Vice Dean of N.Y.U. School of Law. He is one of two co-authors of *Federal Habeas Corpus Practice and Procedure*, a treatise which this Court and the Supreme Court have cited and which is now in its seventh edition. *See, e.g.*, *Banister v. Davis*, 140 S. Ct. 1698, 1705 (2020); *Hardwick v. Sec'y, Fla. Dep't of Corr.*, 803 F.3d 541, 550 (11th Cir. 2015). He also teaches a criminal procedure course which includes a segment on federal habeas law.

**Professor Justin Marceau** is a law professor at the University of Denver's Sturm College of Law, where he teaches and researches in areas including post-conviction review. He is a co-author of the textbook *Federal Habeas Corpus* (2011) and he has published more than a dozen articles on topics related to habeas law.

**Professor Eve Brensike Primus** is the Yale Kamisar Collegiate Professor of Law at University of Michigan Law School. She has written several scholarly

articles on federal habeas law and teaches the "Habeas Corpus" course at Michigan Law.

*Amici curiae* submit this brief to assist the Court in interpreting the statute of limitations that AEDPA imposes on habeas petitioners who are in custody pursuant to the judgment of a state court. This case presents an important opportunity to clarify the correct limitations period in situations where a habeas petitioner, like Mr. Kleckley, diligently pursues recourse in state direct and collateral review proceedings, succeeds in obtaining a plenary resentencing, and then brings all of his federal constitutional claims in a single, timely habeas petition—exactly as AEDPA's drafters intended.

**STATEMENT OF ISSUES**

I.      Whether Kleckley's 2010 resentencing resulted in a "judgment" as the term is used in 28 U.S.C. § 2244(d)(1)(A).

II.     If Kleckley's 2010 resentencing resulted in a judgment, whether that judgment reset the statute of limitations under 28 U.S.C. § 2244(d)(1)(A), rendering timely all of the claims in Kleckley's petition for a writ of habeas corpus under 28 U.S.C. § 2254.

III.    Whether the 2009 state court decision remanding Kleckley's case for resentencing reopened his direct appeal and thereby reset the statute of limitations under 28 U.S.C. § 2244(d)(1)(A).

**INTRODUCTION**

In order to "conserve judicial resources, reduce piecemeal ligation," and "lend finality to state court judgments within a reasonable time," AEDPA imposes strict rules for channeling federal constitutional claims against state court judgments into a single habeas petition. *Banister v. Davis*, 590 U.S. ___, 140 S. Ct. 1698, 1706 (2020) (brackets omitted). Among these rules, AEDPA requires "that state courts must have the first opportunity to decide a petitioner's claim," *Rhines v. Weber*, 544 U.S. 269, 273 (2005); that upon exhausting state review, petitioners must raise all available federal claims in a single petition, rather than successive petitions, 28 U.S.C. § 2244(b); and that they must do so within one year of the relevant date triggering the statute of limitations period—here, "the date on which the judgment became final," 28 U.S.C. § 2244(d)(1)(A).

Mr. Kleckley followed all of these rules. Before seeking relief in federal court, he gave the state courts the opportunity to address his claims—and he prevailed, winning plenary resentencing followed by further direct appeal. Only after he had exhausted direct review of the judgment against him, and thereby rendered that judgment final, did he file his first and only federal habeas petition. Consistent with AEDPA's statute of limitations, he filed his federal petition within one year (excluding time subject to tolling) of the completion of direct review following resentencing.

The district court, however, concluded that Mr. Kleckley's petition was untimely because it misunderstood both what constituted the "judgment" for purposes of the one-year statute of limitations and when that judgment became final. Improperly treating the meaning of "judgment" under § 2244(d)(1)(A) as a question of state law, the district court concluded that Mr. Kleckley became subject to *multiple* judgments during the state court proceedings, and therefore two different limitations periods were triggered. As a result, in the district court's view, Mr. Kleckley should have filed different federal petitions and raised certain claims, as to certain counts, in parallel with ongoing state review.

AEDPA does not encourage or permit such piecemeal litigation. Rather, under federal law, § 2244(d)(1)(A) contemplates a single judgment resolving the questions of guilt and sentencing as to all of the counts against Mr. Kleckley. That judgment becomes final only when the opportunity for direct review is exhausted—including any opportunity that state courts may provide as a result of granting plenary resentencing. That rule ensures that state courts have the chance to review *all* of Mr. Kleckley's claims first, and that Mr. Kleckley then has one year to bring all of his claims in a single federal habeas petition. That is precisely what he did.

Applying the correct federal definition of a final judgment, Mr. Kleckley's petition was timely. This Court should therefore reverse the decision below.

# SUMMARY OF ARGUMENT

The limitations period for Mr. Kleckley to file his federal habeas petition began to run when direct review concluded after his resentencing. Because less than one year of untolled time elapsed before Mr. Kleckley filed his § 2254 petition, that petition was timely.

**I.** The one-year filing period under § 2244(d)(1)(A) began when the "judgment" pursuant to which Mr. Kleckley is in custody became "final." **I.A.** The meaning of "judgment" in AEDPA is a question of federal law. **I.B.** Under federal law, the "judgment" in a criminal case resolves the entire action or proceeding. That means the judgment both resolves the question of guilt and imposes the appropriate sentence, if any, for all of the counts charged and tried together. Consequently, for petitioners like Mr. Kleckley who were subject to a single trial on a single indictment, there is only one judgment that encompasses all the counts against him.

**II.** The judgment against Mr. Kleckley did not become final, so as to trigger the one-year filing period, until Mr. Kleckley's direct appeal from his resentencing concluded. **II.A.** AEDPA expressly defines finality as requiring "the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). If the state court reopens the opportunity for direct review of a previously-final judgment, the judgment is "no longer final for purposes of

7

§ 2244(d)(1)(A)." *Jimenez v. Quarterman*, 555 U.S. 113, 120 (2009). Only when the reopened opportunity for direct review concludes does AEDPA's limitations period begin to run. *Id*. **II.B.** In Mr. Kleckley's case, the state court reopened the opportunity for direct review by ordering plenary resentencing. Mr. Kleckley diligently pursued relief during resentencing and on direct appeal. When he exhausted the available direct review, the judgment became "final" for purposes of § 2244(d)(1)(A), and he then timely filed his federal habeas petition within one year.

**III.** In the alternative, Mr. Kleckley's petition could also be treated as timely because the state court's plenary resentencing resulted in a new judgment. A court that conducts a *de novo* resentencing hearing and imposes a new sentence creates a new judgment as a matter of federal law. This is so even if, as in *Magwood v. Patterson*, 561 U.S. 320 (2010), the actual sentence did not change as a result of the resentencing.

Whether the resentencing reset the one-year period by reopening the opportunity for direct review, *see infra* § II, or created a new judgment entirely, *see infra* § III, the result is the same: The one-year period did not begin to run until "the date on which the judgment became final by the conclusion of direct review" after resentencing. 28 U.S.C. § 2244(d)(1)(A). This Court should therefore reverse the decision of the district court and remand this case for further proceedings.

# ARGUMENT

## I. AEDPA's Statute of Limitations Provision Contemplates a Single Judgment that Resolves the State's Entire Case.

### A. The meaning of "judgment" under § 2244(d)(1)(A) is a question of federal law.

AEDPA's one-year limitations period turns on the date of finality of "the judgment" by which Mr. Kleckley is in custody. 28 U.S.C. § 2244(d)(1)(A). To identify the judgment that triggers AEDPA's one-year limitations period, the Supreme Court has held that courts must look to federal law, not state law.

The term "judgment" has a well-established meaning in federal law. When Congress passed AEDPA in 1996, "judgment" meant "[t]he law's last word in a judicial controversy, it being the final determination by a court of the rights of the parties upon matters submitted to it in an action or proceeding." *See Judgment*, *Black's Law Dictionary* (6th ed. 1991). This is the conception of "judgment" federal courts have consistently applied when interpreting federal laws. In *Berman v. United States*, 302 U.S. 211 (1937), for example, the Supreme Court held that, for purposes of federal appellate jurisdiction, "the judgment is final . . . when it terminates the litigation between the parties on the merits and leaves nothing to be done but to enforce by execution what has been determined." *Id.* at 212-13 (internal quotation marks omitted). Accordingly, no final judgment occurred until the criminal case was resolved by both a finding of guilt and the imposition of a

sentence. *Id*. at 212 ("To create finality it was necessary that petitioner's conviction should be followed by sentence.").

Contrary to the district court's reasoning, the Supreme Court held in *Burton v. Stewart*, 549 U.S. 147 (2007), that the term "judgment" in AEDPA adopts the federal definition of "judgment," not individual state-by-state definitions. *See id*. at 156. In *Burton*, the Court considered whether a Washington state conviction constituted a "judgment" under § 2244(d)(1). To define the "judgment" that triggered the one-year limitations period, the Supreme Court did not look to Washington law. Instead, the Court applied the federal definition of "judgment" discussed in *Berman*. *Id*. Accordingly, the Court concluded that the "limitations period did not begin until both his conviction *and* sentence 'became final by the conclusion of direct review.'" *Id*. at 156-57; *see also Ferreira v. Sec'y Dep't of Corr.*, 494 F.3d 1286, 1293 (11th Cir. 2007) ("What this Court has previously called the judgment of conviction and the sentencing judgment *together* form the judgment that imprisons the petitioner." (emphasis added)).

B.   **"The judgment" for purposes of § 2244(d)(1)(A) resolves all counts charged and tried together.**

Consistent with *Burton*, this Court has recognized that, for purposes of § 2244(d)(1), there is only a single "judgment" that resolves all counts as to both guilt and sentencing—not separate judgments for convictions and for sentences, or separate judgments for each criminal count, as the district court here held. In

10

*Maharaj v. Sec'y Dep't of Corr.*, 304 F.3d 1345 (11th Cir. 2002), for example, the petitioner had been convicted of two counts of first-degree murder, two counts of armed kidnapping, and one count of unlawful possession of a firearm. *See Maharaj v. Moore*, No. 013053CIV, 2001 WL 34010559, at \*2 (S.D. Fla. Dec. 27, 2001). When the petitioner filed his § 2254 petition, "all of [his] convictions and sentences, except for his death sentence . . . ha[d] been fully affirmed in the state courts." *Id*. at \*1. His death sentence, however, had been vacated and the case had been remanded for resentencing. *Id*. Unlike the district court here, this Court recognized that the petitioner in *Maharaj* was not subject to multiple judgments, one for the death sentence and another for the other convictions and sentences. Rather, this Court held that, "[b]ecause Maharaj's resentencing had not occurred at the time he filed his habeas petition, his state judgment had not become final, and thus his habeas petition, which challenged all of his convictions and sentences, was not ripe for review at that time." *Maharaj*, 304 F.3d at 1349.

Several of this Court's sister Circuits have agreed with *Maharaj* that a trial on a single indictment produces only one judgment disposing of all counts. For example, in *United States v. Dodson*, 291 F.3d 268 (4th Cir. 2002), the Fourth Circuit held that "the one-year statute of limitations in § 2255 does not begin to run until there is a final judgment of conviction as to *all counts in the judgment of conviction*." *Id.* at 275-76 (emphasis added). Accordingly, because the Fourth

Circuit had remanded for resentencing, the petitioner's one-year limitations period did not begin to run until a new sentence was imposed—even though the resentencing did not affect all counts against the petitioner. *See id.* at 276. Because § 2244(d)(1)(A) contemplates a single judgment, that judgment must resolve all outstanding issues as to all of the counts. *See id.* ("Each count has the same date of finality."); *see also Wentzell v. Neven*, 674 F.3d 1124, 1127-28 (9th Cir. 2012) (citing *Maharaj* and "treat[ing] the judgment of conviction as one unit, rather than separately considering the judgment's components, i.e., treating the conviction and sentence for each count separately").[2]

        As noted above, the district court took the opposite view and held that multiple "judgments" arose during the state court's review, each triggering a one-year limitations period. A450-51 (Doc. 20 at 2-3). Under the district court's rule, Mr. Kleckley would have had to file multiple federal habeas petitions piecemeal, raising some claims in federal court while the state court's review was still ongoing. As the Supreme Court has explained, however, merely "allow[ing] prisoners to file separate habeas petitions in the not uncommon situation where a conviction is upheld but a sentence is reversed . . . would be inconsistent with both the exhaustion requirement, with its purpose of reducing 'piecemeal litigation,' and

---

[2] *See also Johnson v. United States*, 623 F.3d 41, 46 (2d Cir. 2010); *King v. Morgan*, 807 F.3d 154, 156 (6th Cir. 2015).

AEDPA, with its goal of 'streamlining federal habeas proceedings.'" *Burton*, 549 U.S. at 154 (internal citations omitted). Furthermore, "restricting . . . review to 'final decisions' prevents the debilitating effect on judicial administration caused by piecemeal . . . disposition of what is, in practical consequence, but a single controversy." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170 (1974).

The district court's rule not only allows, but in some cases requires, this type of piecemeal litigation. AEDPA, on the other hand, avoids piecemeal litigation by starting the one-year limitations period only when the "judgment" resolving all counts against the petitioner becomes "final by the conclusion of direct review." 28 U.S.C. § 2244(d)(1)(A).

## II. Mr. Kleckley's Petition Was Timely Because the Judgment Against Him Became Final When He Exhausted His Direct Appeal After His Resentencing.

### A. A judgment becomes final when the opportunity for direct review, including any direct review available as a result of reopening or resentencing, concludes.

AEDPA expressly defines finality for purposes of the one-year limitations period as "the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[3] Accordingly, as long as there is an

---

[3] Like "judgment," the meaning of "final" in § 2244(d)(1)(A) is a matter of federal law. In *Gonzalez v. Thaler*, the Supreme Court held that federal courts should not "scour each State's laws and cases to determine how it defines finality for every petitioner." 565 U.S. 134, 152 (2012). "That approach would usher in state-by-state definitions of the conclusion of direct review," which would "pose serious

opportunity for direct review of a state-court judgment, the judgment is not yet final, and the limitations period does not begin to run. This means that a judgment is not final when a state court decision reopens direct review, such as by conducting a *de novo* resentencing.

In *Jimenez v. Quarterman*, 555 U.S. 113 (2009), the state courts' judgment against the petitioner initially became final when he failed to file a timely appeal in state court. *Id.* at 116. More than a year elapsed and AEDPA's limitations period expired. *Id.* at 116-18. The petitioner then sought, and the Texas Court of Criminal Appeals granted, permission to file an out-of-time appeal. *Id.* at 116. After considering that appeal, the appellate court affirmed the judgment in all respects. *Id.* When Mr. Jimenez then sought federal habeas review, the district court dismissed his petition as untimely and the Fifth Circuit declined to grant a certificate of appealability. *Id.* But, in an opinion by Justice Thomas, the Supreme Court reversed and unanimously held that the petition was timely because it was filed within one year of the conclusion of the out-of-time appeal—almost a decade after the judgment had first become final. *See id.*

The Court explained that, once the state courts reopened the opportunity for direct review by granting the petitioner's motion for an out-of-time appeal, the

administrability concerns" and "be at odds with the uniform definition we [have] adopted." *Id.* at 152-53.

14

judgment "was no longer final for purposes of § 2254(1)(A)." *Id.* at 120. That was because the judgment "was again capable of modification through direct appeal to the state courts and to this Court on certiorari review." *Id.* Accordingly, "[u]nder § 2244(d)(1)(A)'s plain language," the limitations period did not begin to run until "the conclusion of direct review"—in that case, the second, out-of-time direct review permitted by the state court. *Id.*

Even before *Jimenez*, this Court had determined that, when state courts reopen direct review of a judgment by ordering resentencing, AEDPA's limitations period does not begin to run until the latest direct review concludes. *See Ferreira*, 494 F.3d at 1293. The petitioner in *Ferreira* was convicted and sentenced in Florida, and the state courts affirmed his convictions and sentences on direct review. *Id.* at 1288. He filed a state post-conviction motion that was denied, and subsequently, "Ferreira's statute of limitations to file a federal habeas petition expired." *Id.* But in state court, the petitioner then filed a second post-conviction motion challenging his sentence. *Id.* That motion was granted and the petitioner was resentenced, reopening the opportunity for direct review. *Id.*

As a result, this Court held that the federal habeas petition in *Ferreira* was timely because it was filed within one year of the conclusion of direct review of the *resentencing*. This Court recognized that "the judgment to which AEDPA refers is the underlying conviction and *most recent sentence* that authorizes the petitioner's

15

current detention." *Id.* at 1292 (emphasis added). Accordingly, this Court held that "AEDPA's statute of limitations begins to run when the judgment pursuant to which the petitioner is in custody, which is based on both the conviction and *the sentence the petitioner is serving*, is final." *Id*. at 1293 (emphasis added).

Furthermore, this Court recognized that it was irrelevant that Mr. Ferreira "only challenged the original trial proceedings in his habeas petition without raising any challenge based on resentencing." *Id*. at 1288 (cleaned up). Because the conviction and sentence were part of a single judgment, that judgment was subject to all of the petitioner's challenges, and AEDPA provided a single limitations period for bringing those challenges. *See id*. at 1293.

### B. Mr. Kleckley's resentencing created an opportunity for direct review and thus reset the limitations period.

Like the petitioner in *Ferreira*, Mr. Kleckley was granted resentencing on state collateral review, and thereby received a new opportunity for direct review. At Mr. Kleckley's resentencing hearing, the trial judge expressly noted that resentencing had reopened the direct appeal. *See* A418 (Doc. 13-2 at 54) (informing Mr. Kleckley that he had the right to appeal and that, because "it would be direct appeal from the sentence," he was "entitled to counsel on that"). As a result, under *Ferreira* and *Jimenez*, the judgment against Mr. Kleckley did not become final until "the conclusion of direct review" of his resentencing.

The district court failed to treat Mr. Kleckley's appeal from his resentencing as "direct review" from the judgment for purposes of § 2244(d)(1)(A). Instead, the district court misinterpreted *Zack v. Tucker*, 704 F.3d 917 (11th Cir. 2013) (*en banc*), to conclude that different limitations periods applied to Mr. Kleckley's claims, such that his challenges to his convictions and Count I sentence could be (and were) untimely even if his challenges to his Count II sentence were timely. *See* A450-51 (Doc. 20 at 2-3).

*Zack* established no such rule; in fact, as this Court has recognized, "*Zack* did not involve a resentencing or a new judgment" at all. *Thompson v. Fla. Dep't of Corr.*, 606 F. App'x 495, 503 (11th Cir. 2015). Rather, *Zack* concerned "whether a state prisoner can resurrect § 2254 *claims that are untimely with respect to the date when his state judgment became final* (§ 2244(d)(1)(A)) by piggybacking them on a new claim (*Atkins*) that is timely *with respect to another trigger* in § 2244(d)(1), such as a newly recognized, retroactively applicable constitutional right (§ 2244(d)(1)(C))." *Id.* (emphasis added). In other words, *Zack* is a "multiple trigger date case," involving different *types* of triggers under § 2244(d)(1)—including triggers that expressly turn on individual "claims," rather than "the judgment" as a whole. *Id.*; *see Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005) (explaining that § 2244(d) "provides one means of calculating the limitation with regard to the 'application' as a whole, § 2244(d)(1)(A) (date of

final judgment), but three others that require claim-by-claim consideration, § 2244(d)(1)(B) (governmental interference); § 2244(d)(1)(C) (new right made retroactive); § 2244(d)(1)(D) (new factual predicate)"). *Zack* has no application where, as here, the only relevant trigger is the single "date on which the judgment became final by the conclusion of direct review." 28 U.S.C. § 2244(d)(1)(A).

Because Mr. Kleckley's habeas petition was filed within one year, accounting for tolling, of the date on which the judgment authorizing his confinement became final, his entire petition is timely. This case is straightforward and does not implicate many of the usual challenges facing habeas petitioners. For example, Mr. Kleckley does not need to rely on any of the claim-by-claim triggers provided as alternatives under § 2244(d)(1). *See Thompson*, 606 F. App'x at 503. There are no questions of tolling—the parties do not dispute that less than one year of un-tolled time elapsed between the conclusion of direct review from resentencing and the filing of Mr. Kleckley's petition. *See* A43 (Doc. 11 at 11) (respondent conceding that only "213 days of untolled time" elapsed). And he does not need to show that his resentencing resulted in a "new judgment" to avoid any second-or-successive petition concerns, as this was his first and only petition.[4] As a

---

[4] The "new judgment" doctrine was developed in the context of deciding whether a second-in-time petition should be treated as an initial challenge to a new judgment, or as a "second or successive" challenge to the original judgment. *See, e.g.*, *Johnson*, 623 F.3d at 46 (holding that a § 2255 petition challenging all convictions

result, his case can and should be resolved by applying *Ferreira* and *Jimenez*, which explain when a "judgment" becomes "final" following a state-ordered resentencing. The district court erred in denying most of Mr. Kleckley's claims as untimely and this Court should reverse.

## III. Alternatively, Mr. Kleckley's Petition Was Timely Because His Resentencing Resulted in a New Judgment.

This Court should resolve this case by recognizing that the one-year limitations period did not begin until Mr. Kleckley's judgment became "final" upon the conclusion of direct review from resentencing. Alternatively, this Court could treat Mr. Kleckley's petition as timely on the ground that his plenary resentencing created a new judgment. In either case, the one-year limitations period would be the same; it would begin when direct review following the resentencing concluded.

---

was not "second or successive" because resentencing on one count resulted in a "new judgment," which encompassed all of the counts); *King*, 807 F.3d at 156 (holding that a § 2254 petition challenging all convictions was not "second or successive" because an intervening state court judgment had altered two sentences, even though it had not disturbed the other sentences or any conviction). When considering a petitioner's first and only petition, courts need not ask whether the judgment resulting from resentencing is "new," but instead should determine when "the conclusion of direct review" rendered the judgment "final." *See Jimenez*, 555 U.S. at 119; *see also Ferreira*, 494 F.3d at 1293 (holding that a petition was timely without considering whether there was a new judgment).

As Mr. Kleckley explains, in *Magwood v. Patterson*, 561 U.S. 320 (2010), the Supreme Court recognized that plenary resentencing establishes a "new judgment" for purposes of § 2244(b), even if the resentencing does not result in a change to the petitioner's sentence. *See* Appellant's Opening Brief at 35-36. The petitioner in *Magwood* was resentenced after a federal court granted a conditional writ of habeas corpus that invalidated his sentence but did not disturb his conviction. *See* 561 U.S. at 323. After a *de novo* resentencing hearing, the Alabama state courts reimposed and reaffirmed the same sentence as before. *Id*. Even though the sentence had not changed in any way, the Supreme Court explained that *Magwood*'s second-in-time petition challenged a "new judgment" that resulted when he was resentenced. *Id*. at 342. Consequently, even claims he raised in the second petition that could have been raised in his first petition were not "second or successive" because "[a]n error made a second time is still a new error." *Id*. at 339; *see also Rocha v. Sec'y, Fla. Dep't of Corr.*, 692 F. App'x 576, 578 (11th Cir. 2017) (holding that resentencing on one count resulted in a new judgment as to all counts, and that the petitioner could raise challenges to a count that was not modified in the resentencing).

By the same token, when Mr. Kleckley was resentenced, the new judgment that resulted from his new sentence provided a fresh limitations period for all challenges to that judgment. As this Court has explained, "the only judgment that

counts for purposes of section 2244 is the judgment 'pursuant to' which the prisoner is 'in custody.'" *Patterson v. Sec'y, Fla. Dep't of Corr.*, 849 F.3d 1321, 1326 (11th Cir. 2017) (*en banc*); *Ferreira*, 494 F.3d at 1292 (holding that "the judgment to which [§ 2244(d)(1)(A)] refers is the underlying conviction and most recent sentence that authorizes the petitioner's current detention"); *see also Burton*, 549 U.S. at 156 (treating the 1998 judgment resulting from resentencing as "the judgment pursuant to which Burton was being detained"). AEDPA provides a one-year filing period for any challenges to that single judgment.

The district court's conclusion that Mr. Kleckley did not receive a "new judgment" rested on a fundamental error. Believing that Florida law determined what counts as a "judgment" for AEDPA purposes, the district court reasoned that the resentencing merely "resemble[d] a 'judgment,'" but was not actually a judgment because Florida's rules of criminal procedure define a "judgment" as "the adjudication by the court that the defendant is guilty or not guilty." A537 (Doc. 31 at 7). Additionally, the court reasoned that "none of the Resentencing Documents Kleckley has identified . . . appear on the forms the Florida Rules mandate for judgments." A538 (Doc. 31 at 8). Accordingly, the district court concluded that "while the resentencing court signed some judgment-like documents, the only actual 'judgment' the state courts ever issued in this case—

i.e., the only time a state judge adjudicated Kleckley guilty on the forms the Florida Rules require for judgments—was the one from June 12, 2000." *Id.*

The district court got the wrong answer because it asked the wrong question. As explained above, federal law, rather than Florida law, determines the meaning of "judgment" in AEDPA. *See supra* at § I.A. Defining judgment as an adjudication of guilt is flatly inconsistent with *Burton*, which said that, for the purposes of AEDPA's limitations period, "the sentence is the judgment." 549 U.S. at 156; *see also Ferreira*, 494 F.3d at 1293 (same). And as the Supreme Court held in *Magwood*, *de novo* resentencing results in a new judgment, even when it does not alter the terms of the sentence. *See* 561 U.S. at 342.

The district court compounded that error by holding in the alternative that, "[e]ven if we were to accept that the resentencing resulted in a new judgment as to Count 2, Kleckley wouldn't be allowed to challenge his underlying conviction anyway because he'd still be serving a life sentence on Count 1, which the resentencing didn't even purport to disturb." A539 (Doc. 31 at 9). This conclusion rested on the district court's mistaken belief that that the limitations period to challenge the Count I conviction and sentence expired at a different time than the period to challenge the Count II conviction and sentence. As discussed above, however, AEDPA provides one limitations period to challenge the entire judgment,

*supra* at § II.B, which includes all of the convictions and sentences for the counts charged and tried together, *supra* at § I.B.

Accordingly, the district court's decision cannot stand. It chose a plainly incorrect interpretation of § 2244(d)(1)(A)—one based on state law, not federal law, and one that creates multiple "judgments" and filing periods. That view would make a mess of the AEDPA statute of limitations, encouraging, if not requiring, petitioners like Mr. Kleckley to engage in piecemeal litigation in parallel with state review.

Whether this Court treats Mr. Kleckley's resentencing as creating a new judgment, or as resetting the limitations period by reopening the opportunity for direct review, the relevant "judgment" for purposes of § 2244(d)(1)(A) did not become final until the conclusion of direct review from the resentencing. Either way, Mr. Kleckley timely filed his petition, and the decision below should be reversed.

## CONCLUSION

For the foregoing reasons, the Court should reverse the judgment of the district court, hold that Mr. Kleckley's § 2254 petition is timely, and remand.


Dated: December 1, 2023          Respectfully submitted,

                                 */s/ Gregory Cui*
                                 Gregory Cui

Brendan Bernicker
RODERICK AND SOLANGE MACARTHUR JUSTICE
  CENTER
501 H Street NE, Ste. 275
Washington, D.C. 20002
(202) 869-3434
gregory.cui@macarthurjustice.org
brendan.bernicker@macarthurjustice.org

*Counsel for Amici Curiae*

# CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5) because this brief contains 5,220 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman typeface.


Dated: December 1, 2023                    */s/ Gregory Cui*
                                            Gregory Cui

**CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2023, I electronically filed the foregoing *Brief of Federal Courts Scholars as* Amicus Curiae with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: December 1, 2023                          */s/ Gregory Cui*
                                                  Gregory Cui